# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| **TERRY LEGGETT,** § | |
| *Plaintiff* § | |
| § | |
| **v.** § | **Case No. 1:21-CV-789-SH** |
| § | |
| **MAC HAIK FORD, LTD d/b/a AUSTIN** § | |
| **MAC HAIK FORD LINCOLN** § | |
| **MERCURY and DUANE HARRIS,** § | |
| *Defendants* | |

## <u>ORDER</u>

Plaintiff Terry Leggett sued Mac Haik Ford, Ltd. d/b/a Austin Mac Haik Ford Lincoln Mercury ("Austin Mac Haik") and general manager Duane Harris, alleging that they violated the Families First Coronavirus Response Act ("FFCRA") and Emergency Paid Sick Leave Act ("EPSLA") when they fired him on January 18, 2021. Complaint, Dkt. 1. Defendants now ask the Court to find that the statutes did not apply to them. Plaintiff moves for sanctions.

## I.    Coronavirus Claims

The FFCRA and EPSLA, which expired in 2020, applied only to private-sector employers with more than 50 but less than 500 employees. Pub. L. 116-127 § 110(a)(1)(B). Austin Mac Haik employed 192 employees when Leggett was fired. Dkt. 83-2. In their Original Answer, filed October 4, 2021, Defendants stated: "Upon information and belief, Defendants admit that Mac Haik employs more than 50 but less than 500 employees." Dkt. 4 ¶¶ 22, 34. Nearly two years later and just three weeks before trial, on May 17, 2023, Defendants sought leave to amend their answer "to affirmatively deny that they employed more than 50 but less than 500 employees during the relevant period for Plaintiff's cause of action." Dkt. 46 at 2. Defendants asserted that: "Only recently, when the Mac Haik corporate individuals became involved and aware was it disclosed that Mac Haik Corporate had determined that the FFCRA is inapplicable to them because they are

1

a large corporate entity with more than 500 employees." *Id.* Defendants contend that Austin Mac Haik is one of seventeen commonly managed automobile dealerships under Mac Haik Enterprises ("MHE") and therefore is part of an integrated enterprise with more than 1,900 employees. *See* Affidavit of Stacey Brown, Vice President of Human Resources for MHE, Dkt. 84-4 ¶ 6.

The Court held an evidentiary hearing and, finding that justice so required, granted Defendants' motion to amend; canceled the June 5, 2023 trial setting; and permitted the parties to conduct discovery limited to the potentially dispositive fact issue whether Austin Mac Haik is a covered employer under the FFCRA. Dkt. 64. As the Court stated: "If Defendants prove that Mac Haik had more than 500 employees at the relevant time, Mac Haik is not a covered employer under the statutes and all of Plaintiff's claims fail." *Id.* at 5.

The parties have fully briefed this issue. *See* Plaintiff's Brief in Support of FFCRA Jurisdiction (Dkt. 83); Defendants' Brief on Integrated Enterprise Issue (Dkt. 84); Defendants' Response Brief on Integrated Enterprise Issue (Dkt. 85); Plaintiff's Response to Defendants' Brief on Families First Coronavirus Relief Act (FFCRA) Jurisdiction (Dkt. 86). Leggett asks the Court to find that the FFCRA applies to Austin Mac Haik and proceed to trial. Defendants ask the Court to hold that Austin Mac Haik is subject to neither the FFCRA nor EPSLA because it was part of an integrated enterprise that employed more than 500 people when Leggett's employment was terminated and dismiss this action with prejudice.

Having carefully considered the parties' arguments and the evidence, the Court finds that Austin Mac Haik was part of an integrated enterprise with more than 500 employees when Leggett was fired and therefore was not subject to the FFCRA or EPSLA. Because there is no statutory jurisdiction for Leggett's claims, they must be dismissed.

## A. Relevant Law

Congress enacted the Families First Coronavirus Response Act, Pub. L. 116-127, 134 Stat. 178 (2020), in response to the onset of the COVID-19 pandemic. *Wilson v. Marshall Shredding LLC*, 616 F. Supp. 3d 633, 640 (W.D. Tex. 2022), *aff'd*, No. 22-50709, 2023 WL 3151078 (5th Cir. Apr. 28, 2023) (per curiam). The Emergency Paid Sick Leave Act was a component of the FFCRA. *Id.* The EPSLA required "employers" to provide up to 80 hours of paid sick leave for employees who were ill, quarantined, or seeking treatment as a result of COVID-19, or caring for those who were sick or quarantined as a result of COVID-19. *Id.* The FFCRA and EPSLA also made it "unlawful for any employer to discharge, discipline, or in any other manner discriminate against an employee who – (1) takes leave in accordance with the Act; and (2) has filed any complaint or instituted or causes to be instituted any proceeding under or related to this Act." *Id.* The FFCRA and EPSLA expired December 31, 2020. Pub. L. 116-127 § 5109.

As stated, the Acts applied only to private-sector employers who employed more than 50 but less than 500 employees. *Id.* § 110(a)(1)(B). Separate entities are separate employers when determining whether an employer satisfies the FFCRA's numerosity requirement "unless they meet the integrated employer test under the [Family Medical Leave Act ('FMLA')]. If two entities are an integrated employer under this test, then Employees of all entities making up the integrated employer must be counted." 29 C.F.R. § 826.40(a)(2)(iii) (citation omitted). To determine whether Austin Mac Haik was covered under the FFCRA or integrated with all of corporate parent MHE's auto dealerships, the Court must apply the single integrated enterprise test under the FMLA. *Bruce v. Olde England's Lion & Rose Rim, LLC*, No. SA-20-CV-00928-XR, 2021 WL 4953910, at *5 (W.D. Tex. Oct. 25, 2021).

In FMLA actions, the four factors courts consider to determine whether two or more entities are a single integrated enterprise include: (i) common management; (ii) interrelation between

3

operations; (iii) centralized control of labor relations; and (iv) degree of common ownership/financial control. 29 C.F.R. § 825.104(c)(2). "Where this test is satisfied, the employees of all entities making up the integrated employer are counted in determining coverage." *Bruce*, 2021 WL 4953910, at *7 (citation omitted). "This analysis ultimately focuses on the question whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation, and all four factors are examined only as they bear on this precise issue." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997) (citations omitted).

## B. Analysis

To determine whether Austin Mac Haik was covered under the FFCRA, the Court applies the single integrated enterprise test by assessing the relevant factors.

### 1. Common Management

Defendant Harris, Austin Mac Haik's General Manager, reports to Terry Shields, who works for MHE as Director of Dealership Operations (Chief Operating Officer) for the Mac Haik auto dealership group and reports directly to owner and President Joseph "Mac" Haik. Dkt. 85-2. Shields directly controls the operation of all seventeen dealerships and the general manager of each dealership, including Harris, reports directly to him. Shields Tr. at 9:5-23, Dkt. 85-1 at 2; Brown Aff. ¶ 4, Dkt. 84-4. Shields' job description includes: "Direct the activities of divisional leaders (dealership GMs and others) by developing short- and long-term goals, compensation plans, and incentives."; "Enforce divisional sales and gross objectives, taking corrective actions where needed."; and "Coordinate regular meetings (monthly) with managers in each division to ensure profitability and efficiency." Dkt. 85-2.

Because the MHE auto dealership group, including Austin Mac Haik, is under Shields' common management, the first factor favors finding that it is a single integrated enterprise.

### 2. Interrelation Between Operations

Evidence suggesting interrelated operations includes: (1) one entity's involvement in the other's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) one entity's maintenance of the other's books; (5) one entity's issuance of the other's paychecks; and (6) one entity's preparation and filing of the other's tax returns. *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 927 (5th Cir. 2021).

Austin Mac Haik performed some operations autonomously. For example, it was responsible for day-to-day bookkeeping and maintained its own accounting department. Shields Tr. at 37:4-7, Dkt. 83-7 at 14; Harris Tr. at 9:11-19, Dkt. 83-3 at 4. Austin Mac Haik also had its own in-house advertising department. Harris Tr. at 9:11-19, Dkt. 83-3 at 4. And it prepared monthly profit and loss statements. Hearing Tr. at 19:4-15, Dkt. 83-6 at 5.

But most of Austin Mac Haik's relevant operations were interrelated with those of MHE's auto dealership group. Brown states in her affidavit that:

- The financial systems of the dealerships are linked and combined into monthly consolidated reporting across all dealerships, ¶ 11;

- Taxes are prepared and filed centrally at the MHE organizational level, ¶ 12;

- Bank accounts are managed centrally, ¶ 14; and

- IT and marketing services are managed centrally, ¶ 15.

Dkt. 84-4. MHE moves employees within the organization, both through promotions and lateral moves between dealerships. *Id.* ¶ 16. Also, Shields is involved in inventory management for the dealerships. Shields Tr. at 20:2-15, Dkt. 84-2 at 9.

The parties dispute the significance of the payroll evidence. Austin Mac Haik maintained its own payroll department, and it alone is named on Leggett's paystubs and W-2 Forms. Dkt. 83-5;

5

Harris Tr. at 9:11-19, Dkt. 83-3 at 4. But "[p]ayroll is processed from a central platform though it is paid from the individual dealership operational accounts." Brown Aff. ¶ 13, Dkt. 84-4.

Austin Mac Haik's bank accounts, paychecks, tax returns, and IT and marketing services are managed by MHE. Considering the record as a whole, the Court finds that Austin Mac Haik's operations are interrelated with those of MHE. The second factor also weighs in favor of an integrated enterprise finding.

### 3. Centralized Control of Labor Relations

The third factor, centralized control of labor relations, has been called the most important in the integrated employer analysis. *Perry*, 990 F.3d at 927. Leggett emphasizes that Harris made the final decision to terminate his employment and needed no approval from MHE. Harris Tr. at 38:4-9, Dkt. 83-3 at 5; Shields Tr. at 28:11-15, Dkt. 83-7 at 9. Harris was asked at deposition: "Pretty much anything that this dealership does, you are responsible for. Would that be fair?" He answered: "Correct. Yeah." *Id.* at 9:20-22, Dkt. 83-3 at 4. Shields agreed that general managers like Harris "generally have authority over" disciplinary actions at their dealership ("They have a lot of autonomy, yes.") and control over the dealership's day-to-day business. Shields Tr. at 11:20-12:1, Dkt. 83-7 at 5-6. Shields also testified:

> Q. [Harris] testified he was basically responsible all the things at the dealership. Would you agree or disagree?
>
> A. I agree with him. The buck stops with him.
>
> Q. Is -- and let's talk specifically about Mac Haik Austin. Is Mr. Harris responsible for all the employees at that store?
>
> A. Yes.

*Id.* at 12:6-14, Dkt. 83-7 at 6. Harris had authority to set pay for Austin Mac Haik employees, including Leggett. *Id.* at 29:14-30:2, Dkt. 83-7 at 10-11. Leggett argues:

> Harris made the decision to terminate Plaintiff's employment, pursuant to his sole authority to do so. No personnel of entities other than Mac Haik Austin were involved in or influenced Harris's decision. Thus, Mac Haik Austin lacks centralized labor relations with other dealerships in the Mac Haik network. As this factor is the weightiest in the integration inquiry, *see Lusk*, 129 F.3d at 777, this Court should find that the overwhelming evidence on this factor precludes finding that Mac Haik Austin is an integrated employer with either any individual Mac Haik dealerships or wholistically under the Mac Haik parent entities.

Dkt. 83 at 14.

But the record tells a more nuanced story. Shields testified that he sometimes makes disciplinary decisions, when general managers "take a direct order from me," and that he discussed firing Leggett with Harris. Shields Tr. at 10:17-22, 22:10-22, Dkt. 84-2 at 3, 10. Shields testified that his oversight of the dealerships depends on their performance, and that he coaches the general managers "on a daily basis." *Id.* at 10:8-16, Dkt. 84-2 at 3. He "was very involved" with Harris in December 2020, just before Leggett's firing, because Austin Mac Haik was performing poorly. *Id.* at 13:10-14:9, Dkt. 84-2 at 5-6. Shields testified: "I talked to [Harris]," and "when I talked to Duane [Harris] about him firing Terry Leggett, it was a couple reasons. He wasn't working." *Id.* at 18:5-23, 22:10-16, Dkt. 84-2 at 7, 10.

In addition, while Austin Mac Haik has a Human Resources and Payroll Clerk who reports to Harris, her boss is Brown, VP of Human Resources for MHE. Spillar Tr. at 25:9-13, Dkt. 84-3. Although it was Harris who fired Leggett, it was Brown who created his severance packet forms. *See* Dkt. 84-10. Brown establishes HR policies for all dealerships, including all hiring and leave policies, and centrally maintains employment files. She testified at the evidentiary hearing:

> The policies and procedures that are created by our corporate human resources department within our Mac Haik automotive group handbook are utilized across all of our locations. So from the initial hire and onboarding policies, procedures, progressive disciplinary actions, trainings, safety, our safety program, our risk management program, all of those that are inclusive, those policies that are inclusive within our handbook are applied unilaterally to all of our automotive dealerships.

7

Hearing Tr. at 20:4-18, Dkt. 83-6 at 6. In her affidavit, Brown also avers that employees at all dealerships attend joint trainings, meetings, and conferences held by her and Shields, and that human resource plans, procedures, and forms, as well as insurance and benefit plans, are shared across all dealerships. Dkt. 84-4 ¶¶ 10, 21.

The evidence shows that MHE maintains centralized control over Austin Mac Haik's labor relations. Brown sets HR policy for Austin Mac Haik, and Harris answered to Shields with respect to firing Leggett. The Court finds that MHE "was a final decision-maker in connection with the employment matters underlying the litigation." *Lusk*, 129 F.3d at 777.

### 4. Degree of Common Ownership and Financial Control

For the fourth factor, Leggett concedes that "Mac Haik Austin likely satisfies the common ownership and financial control factor." Dkt. 83 at 23.

### 5. Other Evidence

Austin Mac Haik submits evidence that MHE (1) did not take tax credits available under the FFCRA's component Acts, the EPSLA and Emergency Family and Medical Leave Expansion Act, Dkt. 84-12 & 84-13, and (2) "routinely honors FMLA claims by employees of its various business entities, including those with fewer than 50 employees," Brown Aff. ¶ 7, Dkt. 84-4. Leggett counters that the latter argument is not persuasive because the only evidence of FMLA claims is from MHE's Madison/Canton dealerships, which combined have 69 employees. Dkt. 84-7. The Court finds that this evidence weighs slightly in favor of an integrated enterprise finding.

## C. Conclusion as to Coronavirus Claims

The record shows that although Austin Mac Haik operated with significant autonomy, it did so under the management and control of parent Mac Haik Enterprises. All four of the FMLA factors support a finding that Austin Mac Haik was part of an integrated enterprise with more than 500 employees at the relevant time and therefore not subject to the FFCRA or EPSLA.

Because Plaintiff's only two claims – FFCRA retaliation and FFCRA interference – are brought under the FFCRA, the Court **DISMISSES** his Complaint **with prejudice**.

## II.    Motion for Sanctions

Leggett also requests an award of attorney fees as a sanction for Defendants' late assertion that the FFCRA did not apply to Mac Haik Austin. Plaintiff's Motion for Sanctions, filed July 1, 2024 (Dkt. 87). Leggett seeks sanctions against Defendant Austin Mac Haik "and/or their legal counsel" under Rule 11 and 28 U.S.C. § 1927. *Id.* at 1.

Leggett makes two arguments for sanctions. First, Leggett contests the statement quoted above from Defendants' motion to amend their answer, filed May 17, 2023: "Only recently, when the Mac Haik corporate individuals became involved and aware was it disclosed that Mac Haik Corporate had determined that the FFCRA is inapplicable to them because they are a large corporate entity with more than 500 employees." Dkt. 46 ¶ 5. Leggett calls this assertion "blatantly false" because Shields allegedly testified at deposition that he only became aware of this issue six months *later*, in December 2023.[1]

This argument is not persuasive. Brown testified at the evidentiary hearing that she determined in 2015, six years before this litigation, that MHE is an integrated employer for FMLA purposes. Hearing Tr. at 10:17-12:14, Dkt. 80 at 10-12. Brown also testified that she and "corporate" became aware of this lawsuit, filed September 8, 2021, when she "returned from an extended leave of absence in October, November of 2021." *Id.* at 45:24-46:5, Dkt. 80 at 45-46, Dkt. 88-1 at 2-3. It is clear from Brown's testimony that she was on leave when Defendants filed their answer on October 4, 2021. *Id.*; *see also* Shields Tr. at 32:10-33:7, Dkt. 88-2 at 2-3 ("In an employment case like this, it would go through Stacy [sic] Brown, which is the head of HR for the entire company.");

---

[1] The cited testimony is not of record.

Defendants' Response in Opposition to Plaintiff's Motion for Sanctions, Dkt. 88 at 1-2 ("The person within the organization who knew about its integrated employer status—its Vice President of Human Resources, Stacey Brown—was on a leave of absence when the lawsuit arrived."). Defendants state that they filed their motion for leave to amend their answer the day after a May 16, 2023 phone call with Brown that "led to the identification of the application of the integrated employer doctrine to the claims in this case." Dkt. 88 at 3.

Regardless when *Shields* became involved in the litigation, Defendants show that "corporate individual" *Brown* belatedly became aware that they filed their answer without recognizing that MHE is an integrated employer because she was on an extended leave of absence when both the complaint and answer were filed. Leggett has not shown that Defendants' motion to amend was "blatantly false."

Second, Leggett argues that he "has been severely prejudiced by the amendment because Plaintiff had to conduct discovery (request documents, issue interrogatories, and conduct deposition) on the issues raised by the amendment." Dkt. 87 at 4. This argument also fails because Leggett would have needed to take the same discovery to contest the integrated employer issue no matter when Defendants first asserted that they were not covered by the FFCRA.

For these reasons, Plaintiff's Motion for Sanctions (Dkt. 87) is **DENIED**.

The Court will enter final judgment in a separate order.

**SIGNED** on July 19, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

10